IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| CURTIS NATHANIEL BULLMAN | § | |
| VS. | § | CIVIL ACTION NO. 1:18cv442 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM OPINION

Petitioner Curtis Nathaniel Bullman, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Factual Background

An indictment was returned charging petitioner with continuous sexual abuse of child. Following a jury trial in the 128th District Court of Orange County, Texas, petitioner was convicted of the offense with which he was charged. He was sentenced to life imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Ninth District. *Bullman v. State*, 2016 WL 1469592 (Tex.App.-Beaumont, 2016). The Texas Court of Criminal Appeals refused a petittion for discretionary review and a motion for rehearing was denied.

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing.

Grounds for Review

Petitioner asserts the following grounds for review: (a) the trial court gave an erroneous jury charge; (b) he received ineffective assistance of counsel because counsel: (1) failed to object to improper argument by the prosecution; (2) failed to object to the prosecution vouching for the credibility of the complainant; (3) failed to object to the indictment failing to allege a culpable mental state and (4) failed to object to the section of the penal code petitioner was charged with violating and (c) the cumulative effect of the jury charge error and ineffective assistance of counsel

in failing to object to the charge denied him due process of law and a fair trial.

Evidence at Trial

In his appellate brief, petitioner summarized the evidence at trial as follows:

Appellant, Curtis Nathan Bullman, married Christine Istre on February 20, 2005. On April 27, 2013, Istre's daughter, E.D., then 15 years old, made an outcry of sexual abuse against her stepfather, Curtis Bullman. E.D. alleged that Bullman had been sexually abusing her since she was eight years old. Bullman was indicted for one count of continuous sexual abuse of a child.

The evidence presented at trial established that E.D. was born on March 6, 1998 and turned fourteen on March 6, 2012. The specific events as alleged in the indictment involved purported instances of abuse that occurred when E.D. was thirteen years old.

E.D.'s mother, Christine, testified at trial. Christine testified that during the relevant time frame she worked nights and Bullman was in charge of tending to the children and the house. Bullman is on disability and unable to work because he is HIV positive. Christine testified that on June 3, 2011 she was working at the Hampton Inn in Orange County and went home early from work. She testified that she returned from work and found Bullman behind closed bedroom doors with E.D. and she observed that both were unclothed. After initially questioning E.D. about what was going on E.D. explained that she had gone into the bedroom to show Bullman something on her stomach and that Bullman had walked out of the shower unclothed. Bullman also explained that nothing was going on. After initially leaving the home, Bullman returned after Christine was satisfied that it had been a "wrong place at the wrong time situation." Bullman remained in the home with Christine and the children until his marriage fell apart and he voluntarily left in February of 2013.

Roughly two months after Bullman left, E.D. made the outcry of sexual abuse. Christine testified that E.D. told her that Bullman had been having sex with her since she was eight years old. Christine stated that the abuse began when E.D. came home and asked Bullman what sex was after hearing a conversation about it on the school bus. Christine stated that E.D. told her the penetration started out as occurring several times a month and eventually escalated to several times a week.

E.D. and Bullman both testified at trial. E.D. was sixteen years old at the time of trial. E.D. testified that her mom began dating Bullman when she was six years old. At some point thereafter they got married. E.D. testified that she came home from school one day and asked Bullman what sex was. E.D. stated that her mom was at work. E.D. testified that Bullman showed her a porn video and told her to remove her clothes. Over defense counsel's objections, E.D. testified that Bullman took off his clothes and touched her private parts. According to E.D., sexual intercourse began when she was nine years old.

E.D. explained that she was twelve years old when she and her family moved to Texas. They moved to Orange County in 2011. She testified that on June 3, 2011, her mom got off early and came home and started banging on the door after she and Bullman had just finished having sexual intercourse. She told the jury that during this time period her mother was working nights and Bullman was having sex with

her often. She testified summarily that it also happened on March 5, 2012. E.D. explained that Bullman told her that he loved and cared for her the way a boyfriend or husband does. Though Bullman is HIV positive according to the trial testimony, E.D. testified that he did not relieve himself inside her and she has testified negative for the disease. She told the jury that on April 27, 2012 she told her mother everything and they went to the police.

E.D. explained that after the police report was made, a detective came to her house and she made recorded phone calls to Bullman for the purpose of getting him to say something to make him look guilty. The recordings of the telephone conversations purportedly between E.D. and Bullman were admitted at trial over defense counsel's objections. E.D. also testified that she communicated with Bullman through facebook. Facebook recordings were admitted at trial over defense counsel's objections.

Bullman also testified at trial in his case in chief. Bullman stated that he got HIV after being raped in a county jail at a young age. Bullman was later married and had three children. His wife and two of his children died from complications associated with the HIV. Bullman explained that after he and Christine married he quit working and took care of the house and the kids. He made dinner and made sure the kids ate and did their homework while Christine was at work. Bullman testified when E.D. was fourteen his relationship with her began to change into something other than a stepfather/daughter relationship and that they began to spend time together talking about their problems and became close. He testified that they would stay up late watching movies or watching TV together.

Bullman testified that on June 3, 2011, E.D. came into his bedroom saying she had something on her back that she wanted him to look at. He had just come out of the shower and was wearing his robe. Bullman testified that E.D. was laying on his bed under the covers naked. Bullman explained that Christine started coming down the hall and he told E.D. to put her clothes on and leave the room concerned that "it didn't look right." He told Christine to wait a minute while E.D. put her clothes back on. He explained that after Christine came into the room saying she was going to call the cops he got his things and left. Bullman stated Christine talked to E.D. and found out it was a mistake and asked him to come back. He explained that when he returned home following the incident everything was fine.

Bullman testified that E.D. did not ask him about sex when she was 8 years old and he did not approach her about sex or describe it. Bullman testified that he treated E.D. like he was her father. Bullman testified that when E.D. was 10 and 11 years old they had a normal father-daughter relationship. Bullman testified that when E.D. was 12 years old he treated her like he was her father but things started to get different. Bullman stated he and E.D. began to talk a lot and grew close. He stated that she started wanting to snuggle and that he had the impression she was missing something in her life from a lack of relationship with her biological father. Bullman stated that nothing happened between him and E.D. in 2010. Bullman stated that other than the incident that looked inappropriate with E.D. in his bedroom, nothing inappropriate happened with him and E.D. in 2011. He stated that they would take walks around the neighborhood, watch TV and hang out together in the evenings.

Bullman testified that in March of 2012, E.D. came into his room to lay down with him and watch T.V. He stated that they began rubbing on each other and he asked

3

her if she was sure she wanted to do this, and she said yes. Bullman explained that the rubbing led to sex. Bullman admitted that he had sex with E.D. on this single occasion and testified that it was the only time he ever had sexual contact with E.D. He testified that he felt bad about it and they stopped talking for a while. Bullman stated that E.D. became normal around him again but he couldn't revert back to the friendly relationship they had maintained prior. He didn't feel comfortable with it. Bullman testified that he tried to distance himself from E.D. Bullman said over the course of the next 11 months prior to his leaving he and E.D. got along some and fought some because E.D. wanted them to spend time together and he didn't. Bullman stated that he and Christine had been fighting and he left in February of 2013. He stated he wanted to remove himself from the situation.

## Standard of Review

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is

difficult to meet "because it was meant to be." *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

Analysis

*Erroneous Jury Charge*

Petitioner states the complainant's testimony described acts of sexual abuse that occurred before the effective date of the statute. He asserts that the charge given to the jury permitted it to convict based upon events that occurred before September 1, 2007, the effective date of the statute, and based upon events that occurred in another state. Petitioner states counsel should have objected to the charge on this basis.

This argument is not supported by the record. As described above, the complainant testified that she, her mother and petitioner did not move to Texas until 2011. She also testified that petitioner committed the three acts sexual abuse set forth in the indictment while they were living in Texas. The acts set forth in the indictment occurred in 2011 and 2012, after the effective date of the statute. Further, the jury was told that in order to convict they had to unanimously agree that the defendant had committed two or more of the acts of sexual abuse alleged in the indictment.

As the jury was told a conviction must be based on a unanimous finding that petitioner committed two or more of the acts alleged in the indictment, and as those acts allegedly occurred in 2011 and 2012, when the complainant was living in Texas, the jury charge did not permit the jury to convict based upon acts that occurred before the effective date of the statute or in a state other than Texas. This ground for review is therefore without merit.

*Ineffective Assistance of Counsel*

A. <u>Legal Standard</u>

In order to establish an ineffective assistance of counsel claim, a petitioner must prove counsel's performance was deficient, and that the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). As a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id.*; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a petitioner must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner must show a substantial likelihood that the result would have been different if counsel had performed competently. *Harrington v. Richter*, 562 U.S. at 110.

B. <u>Application</u>

1. <u>Failure to Object to Improper Jury Argument</u>

Petitioner states that during closing argument, the prosecutor told the jury "if you told me 'Do you remember when we went to Tennessee on that road trip and I fell asleep and you had sex with me, wasn't that a hoot?'" He states the prosecutor stated petitioner should have then stated

"what are you talking about? I never went to Tennessee with you, I never had sex with you against your will." The prosecutor stated that would have been a natural response by petitioner, but that petitioner did not say that.

Petitioner states the prosecutor never introduced any evidence at trial regarding a trip to Tennessee. He states his attorney should have therefore objected to the argument as based on evidence that was not introduced at trial. Petitioner asserts the prosecutor's argument allowed the jury to consider an act of sexual abuse that was not part of the record.

Petitioner asserts the prosecutor also stated, "what do we know about [his] credibility? We know he's a convicted felon." Petitioner states that there was no evidence introduced stating he had been convicted of a felony, only a misdemeanor. Petitioner contends counsel should have objected to this statement as well.

Under Texas law, proper jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from evidence; (3) answers to argument by opposing counsel and (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex.Crim.App. 2011).

During trial, a recording of a telephone conversation between the complaint and petitioner was played. During the conversation, the complainant asked petitioner to remember when they first stated having sex while they were living in Tennessee and petitioner named his penis. Petitioner indicated he remembered that.

During his testimony, petitioner acknowledged he has been convicted of breaking and entering in Michigan and was imprisoned as a result of the conviction. He stated he thought he had only been convicted of buying stolen goods. Under Section 110 of the Michigan Penal Code, a conviction for breaking and entering into a occupied dwelling with the intent to commit a felony or larceny is a felony conviction.

Despite petitioner's assertion, there was evidence introduced that petitioner and the complainant had sex while living in Tennessee. Petitioner's statement that there was no testimony

7

regarding a road trip to Tennessee is correct. But as there was evidence petitioner and the complainant had sex while living in Tennessee, there is not a reasonable probablilty the result of the proceeding would have been different if counsel had objected to the reference to a road trip.

In addition, there was testimony that petitioner had previously been convicted of a felony, although his mistake as to what crime he was convicted of committing may have caused him to believe he had only been convicted of a misdemeanor. As a result, counsel would have had no basis to object to the prosecutor stating petitioner had been convicted of a felony.

2. <u>Failure to Object to Vouching for Credibility of Complainant</u>

Petitioner states that during closing arguments, the prosecutor told the jury that petitioner was a convicted felon. The prosecutor also said the complainant was a victim of child abuse and made good grades in school. He described what petitioner had to gain and lose if the jury believed the testimony of the complainant. The prosecutor went onto state that the complainant's testimony was believable and that petitioner was guilty.

Petitioner asserts it was improper for the prosecutor to comment on the credibility of a witness or express the belief that a particular witness was lying. He states he had the right to be tried based on the charge and evidence at trial, not for being a convicted felon. Petitioner contends counsel should have objected to the prosecutor's statements.

"[A] prosecutor may not personally vouch for the credibility of a [prosecution] witness, as doing so may imply that the prosecutor has additional personal knowledge about the witness and facts that confirm such witness' testimony, or may add credence to such witness' testimony." *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). However, it is not improper vouching for a prosecutor merely to call the jury's attention to evidence in the record relevant to a witness' credibility and ask the jury not to believe testimony based on such evicence. *United States v. Williams*, 343 F.3d 423, 438 n.14 (5th Cir. 2003). While a prosecutor may not express a personal opinion as to the credibility of witnesses, he may argue reasonable inferences from the evidence as to whether a witness has a motive to lie. *United States v. Garcia*, 522 F.3d 597, 600 (5th Cir. 2008).

8

A review of the closing argument reveals that the prosecutor did not express a personal opinion as to the credibility of any witness or improperly vouch for the credibility of the complainant. Instead the prosecutor properly argued why the jury should draw inferences from the evidence as to whether witnesses might have a motion to lie of tell the truth or lie. Further, there was evidence in the record that petitioner had a prior felony conviction and it was not improper for the prosecutor to argue that petitioner's prior felony conviction made him less credible as a witnesses.

The prosecution's argument regarding the credibility of witnesses was not improper. As a result, counsel would have had no basis on which to object to the argument. The failure to make such an objection therefore did not fall below an objective standard of reasonableness and did not result in prejudice.

### 3. Failure to Object to Improper Indictment

Petitioner states the indictment was defective because it failed to allege a culpable mental state. He contends the indictment did not make reference to the culpable mental state of "intentionally and knowingly." He states counsel should have objected to the deficiency in the indictment.

The indictment accused petitioner of committing the offense of continuous sexual abuse of a child by committing two or more acts of sexual abuse of a child younger than 14 years of age, during a period of longer than 30 days. The predicate acts identified in the indictment were acts constituting aggravated sexual assault of a child that occurred on 3 separate dates.

Section 22.021 of the Texas Penal Code, which sets out the elements of the offense of aggravated sexual assault, lists five specific acts that constitute aggravated sexual assault when committed against a child. Section 22.021 requires that each of the acts be committed "intentionally or knowing." As a result, aggravated sexual assault against a child can only be committed if the actor acts "intentionally or knowingly." *Buxton v. State*, 526 S.W.3d 666, 684 (Tex.App.–Houston [1st Dist.] 2017). Because the indictment referenced three acts of aggravated sexual assault of a

child as predicate acts, and the only way the offense of aggravated sexual assault of a child could be committed was if the defendant acted intentionally or knowingly, the indictment was not deficient for failing to allege a culpable mental state. *Id.*

Under Texas law, petitioner's indictment was not required to allege a culpable mental state. Accordingly, any objection counsel made to the indictment would have been overruled. Counsel's failure to make an objection to the indictment therefore did not fall below an objective standard of reasonableness or cause petitioner to suffer prejudice.

    4. <u>Failure to Object to Penal Code Section</u>

Petitioner was convicted for violating Section 21.02 of the Texas Penal Code. He asserts this statute violated due process because it failed to require the jury to reach a unanimous verdict as to each criminal act.

Petitioner states there were three dates set forth in the indictment: June 3, 2011, November 1, 2011, and March 5, 2012. He asserts that under the statutory language, a conviction under Section 21.02 requires the proof of five elements: (1) a person, (2) who is seventeen or older, (3) commits a series of two or more acts of sexual abuse, (4) during a period of 30 or more days and (5) each time the victim is younger than 14 years of age. He states the statute permits the jury to convict without a unanimous agreement as to each act of sexual abuse the defendant committed. Petitioner contends his attorney should have argued that the statue was unconstitutional.

Texas state courts have held that Section 21.02 does not violate a defendant's right to jury unanimity. *Fulmer v. Texas*, 401 S.W.3d 305, 311-12 (Tex.App.–San Antonio 2013); *Render v. State*, 316 S.W.3d 846, 857-58 (Tex.App.–Dallas 2010). Texas courts have held that the individual acts of sexual abuse relate to the manner and means of committing the crime and are not elements of the offense. *Fulmer*, 401 S.W.3d at 312. While jurors must unanimously agree on each element of the crime in order to convict, they need not agree on all the underlying facts that make up a particular element. *Ngo v. States*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). When alternative manners and means of committing a crime are submitted to a jury, it is appropriate for the jury to

return a general verdict of guilty if the evidence supports a conviction under any one of them. *Kitchens v. State*, 823 S,W.3d 256, 258 (Tex.Crim.App. 1991).

Based on the authorities cited above, the Texas state courts do not consider Section 21.02 unconstitutional based upon the argument asserted by petitioner. As a result, the trial court would have rejected any challenge to the constitutionality of the statute. Counsel's failure to challenge the statute on this basis therefore did not fall below an object standard of reasonableness and did not cause petitioner to suffer prejudice.

*Cumulative Effect*

Finally, petitioner argues that the cumulative effect of the asserted error in the jury charge and the alleged acts of ineffective assistance of counsel denied him due process and a fair trial. However, relief based upon the cumulative effect of errors is available only for errors of a constitutional dimension. *Coble v. Quarterman*, 496 F.3d 330, 440 (5th Cir. 2007). However, for the reasons set forth above, the jury charge was not erroneous. Nor has petitioner demonstrated he received ineffective assistance of counsel. As petitioner has failed to show errors of a constitutional dimension occurred at his trial, this ground for review is without merit.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit. A final judgment will be entered denying the petition.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability in this matter. An appeal from a judgment denying federal habeas relief may not proceed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253. The standard for a certificate of appealablilty requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84; *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, the petitioner need not demonstrate that he would prevail on the merits. Rather, he must demonstrate that the issues he raised are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the

11

questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

In this case, the petitioner has not shown that the issues he raised are subject to debate among jurists of reason. The factual and legal issues raised by petitioner have been consistently resolved adversely to his position and the questions presented are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue.

**SIGNED** this the 24 day of **August, 2021.**

_____
Thad Heartfield
United States District Judge